*446
 
 OPINION OF THE COURT
 

 Meyer, J.
 

 The use in regulations promulgated by the Superintendent of Insurance pursuant to Insurance Law § 2329 of aggregate industry data rather than the individual carriers’ line-by-line results in order to determine the excess profit to be refunded on motor vehicle insurance policies is not inconsistent with the provisions of that section. The order of the Appellate Division should, therefore, be reversed, with costs, and judgment granted in favor of defendant declaring 11 NYCRR part 166 to be valid.
 

 I
 

 Petitioners/plaintiffs (hereafter plaintiffs) are the New York Public Interest Research Group (NYPIRG), a not-for-profit membership corporation, whose purposes include protection of consumers’ rights, and six individual members of NYPIRG each of whom owns an automobile for which he or she has purchased automobile insurance. By their petition/complaint they ask article 78 relief with respect to regulations (11 NYCRR part 166) promulgated by the Superintendent of Insurance establishing the method for determining excess profit under Insurance Law § 2329, as well as judgment declaring the regulations invalid for failure to comply with that section. Their contention is that the regulations, which adopted an aggregate industry approach to determination of the point at which profit becomes excess, contravenes section 2329, because it requires the same company-by-company, line-by-line determination called for by regulations (11 NYCRR part 165) adopted pursuant to Insurance Law § 2323.
 

 Respondent/defendant Department of Insurance (hereafter defendant or Department) filed objections in point of law and moved to dismiss for failure to state a cause of action. Special Term granted the motion to dismiss, holding that the adoption of the regulations was legislative action not reviewable in an article 78 proceeding and that, there being legislative findings supporting the method used by the Department, the regulations were valid. On appeal to the Appellate Division, a majority of that court agreed that an article 78 proceeding was not a proper method by which to challenge quasi-legislative action, but concluded that the part 166 regulations were invalid because at variance with the part 165 regulations, whereas Insurance Law § 2329 required that excess profits
 
 *447
 
 under section 2329 be "computed in accordance with” the regulation required by section 2323. It, therefore, modified on the law by reversing so much of Special Term’s judgment as dismissed the complaint, declared the regulations unlawful and invalid, and, as so modified, affirmed. The dissenting justices concluded that the part 166 regulations were rationally based and, therefore, valid. They reasoned that the purposes behind the two Insurance Law sections differed; that part 165 vested discretion in the Superintendent to permit or require use of a different method of computing profit than that provided for in that part when doing so would produce a more reliable result and that the Superintendent had concluded, after long study, that use of aggregate industry data was necessary to minimize random fluctuations and avoid unfair treatment of some insurers; and that to set an excess profit threshold for each individual insurer involved serious technical problems. We agree, although on somewhat different reasoning, with the result reached by the dissenting justices and, therefore, reverse and grant judgment declaring part 166 valid.
 

 II
 

 Insurance Law § 2323 (a) provides that:
 

 "(a) The superintendent shall by regulation establish a method for determining profitability, from whatever source profits are derived, and rates of return on net worth, assets and earned premiums, with respect to each kind of insurance subject to this article, based on reasonable and uniform assumptions, including assumptions as to:
 

 "(1) amounts of net worth attributable to such kinds of insurance;
 

 "(2) assets available for investment generated by such kinds of insurance;
 

 "(3) federal income taxes; and
 

 "(4) average earnings on insurers’ investments.”
 

 The subdivision applies "to all kinds of insurance written on risks or operations in this state”, with exceptions not pertinent to this case (Insurance Law § 2302 [a]).
 

 Section 2329, on the other hand, deals only with excess profits on motor vehicle insurance. To the extent here pertinent, it provides: "In accordance with regulations prescribed by the superintendent, each insurer issuing policies which are
 
 *448
 
 subject to article fifty-one of this chapter, including policies of motor vehicle personal injury liability insurance or policies of motor vehicle property damage liability insurance or insurance for loss or damage to a motor vehicle, shall establish a fair, practicable, and nondiscriminatory plan for refunding or otherwise crediting to those purchasing such policies their share of the insurer’s excess profit, if any, on such policies. An excess profit shall be a profit beyond a percentage rate of return on net worth attributable to such policies, computed in accordance with the regulation required by section two thousand three hundred twenty-three of this article, and determined by the superintendent to be so far above a reasonable average profit as to amount to an excess profit, taking into consideration the fact that losses or profits below a reasonable average profit will not be recouped from such policyholders. Each plan shall apply to policy periods between January first, nineteen hundred seventy-four and December thirty-first, nineteen hundred eighty-five.”
 
 [1]
 

 The Appellate Division majority noted that part 165 and part 166 were consistent to the extent that both define profit in terms of net worth, that the part 165 formula includes industry data and the part 166 formula considers individual insurer data, and that part 166’s computation of profits on an aggregate industry basis rather than on a percompany basis as under part 165 "may be well advised and thoughtfully conceived” (106 AD2d, at p 831), but nevertheless held part 166 invalid because not "in accordance with * * * part 165.” For a number of reasons we disagree.
 

 The Superintendent of Insurance is vested by Insurance Law § 301 with the power to prescribe regulations interpreting the provisions of the Insurance Law, provided only that his regulations are not inconsistent with some specific provision of the law
 
 (Ostrer v Schenck,
 
 41 NY2d 782, 785). By that section he is granted " 'broad power to interpret, clarify, and implement the legislative policy’ ”
 
 (id.)
 
 and his interpretation, if not irrational or unreasonable, will be upheld in deference to his special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision
 
 (Kurcsics v Merchants Mut. Ins. Co.,
 
 49 NY2d 451, 459;
 
 Matter of Howard v Wyman,
 
 28 NY2d 434, 438;
 
 see, Matter of Jones v Berman,
 
 37 NY2d 42).
 

 
 *449
 
 It is not argued in the present case that the 21% excess profit threshold established by part 166 is irrational. Rather it is contended, and the Appellate Division held, that the regulation was inconsistent with the requirement of section 2329 that it be "in accordance with” part 165, the regulation issued under section 2323. Inconsistency as a matter of statutory interpretation within the rule of the
 
 Kurcsics
 
 case exists, however, only if "in accordance with” means in strict conformity with rather than in harmony with, or not inconsistent with. Yet the phrase has generally been construed to require not identicality of result but only reasonable or just correspondence
 
 (City & County of San Francisco v Boyd,
 
 22 Cal 2d 685, 690, 140 P2d 666, 668 ["in accordance with” the prevailing rate of compensation does not proscribe a rate in excess of the prevailing maximum];
 
 Holmgren v City of Lincoln,
 
 199 Neb 178, 182, 256 NW2d 686, 689 [the words "in accordance with a comprehensive plan” establish the plan as a guide, not something which "sets future zoning in concrete until the plan itself is changed”];
 
 City of Norfolk v Norfolk Landmark Pub. Co.,
 
 95 Va 564, 567, 28 SE 959, 960 ["in accordance with the constitution and laws of this state” is the equivalent of "not repugnant to,” "not in conflict with,” or "not inconsistent with”; a statute authorizing a city to tax anything for which a license is required by the State does not preclude its taxing what the State does not];
 
 see, In re Coane’s Estate,
 
 310 Pa 138, 143, 165 Atl 2, 4 [a bequest made "in accordance with” an antenuptial agreement requiring payment of an annual stipend "unconditionally” was not intended by the testator to modify the agreement but to comply with it "unconditionally”]). It follows that, as the dissenting justice stated, "the Superintendent of Insurance could rationally construe the uniformity requirement [of section 2329] as prohibiting inconsistent results, rather than mandating identical formulas” (106 AD2d, at p 832).
 

 There is, moreover, a further ambiguity in the second sentence of section 2329 which brings into play the Superintendent’s power of interpretation and his expertise: is it, as plaintiffs argue, "profit” that is to be "computed in accordance with” part 165 on a company-by-company, line-by-line basis, or, as the Department contends, "net worth attributable to” motor vehicle insurance that must be so computed, leaving the Superintendent free to compute the rate of return on net worth which constitutes an excess profit on an aggregate industry basis, the rate thus arrived at to be then applied to
 
 *450
 
 individual carriers. That the latter rather than the former was intended is, as the dissent below pointed out, consistent with the different purposes of the two provisions. Thus, the reason for assessing profitability as provided in section 2323 is to assure that insurance rates "not be excessive, inadequate or discriminatory, to promote price competition and competitive behavior among insurers, to provide rates that are responsive to competitive market conditions” (Insurance Law § 2301). Section 2323 applies to a wide variety of insurance coverages (Insurance Law § 2302), whereas section 2329, which applies only to motor vehicle insurance, was intended to give motor vehicle policyholders the benefit of the reduction in automobile accidents and resulting claims fortuitously produced by the then existing gasoline shortage and the enactment in 1973 of no-fault legislation.
 
 [2]
 
 It is apparent, therefore, that the reductions which section 2329 required were occasioned not by individual carrier activity, but by outside factors which would be expected to affect all carriers in approximately the same way.
 

 That conclusion is also strongly suggested by the section’s use of "reasonable average profit” as a measure of excessiveness. Reasonable average profit could refer to the annual profits of an individual insurer averaged over a given period (e.g., the six-year cycle which the industry apparently accepts as appropriate,
 
 see,
 
 11 NYCRR 166-2.3), but the industry-wide factors motivating the section suggest rather that it refers to a reasonable profit average as determined by the Superintendent on an industry basis, against which to measure excessiveness resulting from external and unforeseen factors.
 
 [3]
 
 This follows reasonably from the direction that the Superintendent take "into consideration the fact that losses or profits below a reasonable average profit will not be recouped from such policyholders”, for if it is a company and line reasonable average profit rather than one based on industry average, the reasonable average profit will have to be set higher for some
 
 *451
 
 carriers in order to protect them against the nonrecoverability of their losses, or below average profits, in later years, to the disadvantage of policyholders who will, as a result, receive a lesser distribution.
 

 Both plaintiffs and defendant argue that the Legislature’s failure to amend the section favors their or its interpretation; plaintiffs, because though part 165 was promulgated in 1975, the sunset date of section 2329 was extended three times thereafter (citing L 1977, ch 9; L 1979, ch 498; L 1982, ch 527) and continued in the same form in the 1984 recodification of the Insurance Law; the Department, because part 166 was promulgated December 30, 1982 and the Legislature thereafter, by Laws of 1983 (ch 472), again extended the sunset date of the section and then continued the section in the 1984 recodification without change. We have held legislative acquiescence by silence significant in prior cases
 
 (Lucenti v Cayuga Apts.,
 
 48 NY2d 530, 541;
 
 Engle v Talarico,
 
 33 NY2d 237, 242), but when the inferences arising from legislative inaction are as contradictory as those sought to be drawn here, we think it the more realistic course to decline to draw an inference of legislative intent either way from the failure to act
 
 (cf. Boys Mkts. v Clerks Union,
 
 398 US 235, 241; Dickerson, The Interpretation and Application of Statutes, at 181-182).
 

 Finally, it is necessary only to note that plaintiffs’ line-byline contention is inconsistent with the reference in the first sentence of section 2329 to various types of motor vehicle insurance and the requirement by that sentence of a plan for refund "to those purchasing such policies their share of the insurer’s excess profit, if any, on such policies”. The repeated reference to "policies” without regard to whether one or more lines of coverage are included in the policy can only be read as requiring a refund per policy rather than per line, or at least the Superintendent could reasonably so interpret the section.
 

 For the foregoing reasons, the order of the Appellate Division should be reversed, with costs, and judgment should be granted in favor of defendant declaring 11 NYCRR part 166 valid.
 

 Chief Judge Wachtler and Judges Jasen, Simons, Kaye, Alexander and Titone concur.
 

 Order, insofar as appealed from, reversed, etc.
 

 [1]
 

 . The December 31, 1985 limitation of the plan corresponds with the expiration of section 2323 on the same date (Insurance Law § 2342).
 

 [2]
 

 . Section 2329 was enacted by the Laws of 1973 (ch 13) and amended by the Laws of 1974 (ch 501). The 1974 amendments were part of Governor Wilson’s legislative program (1974 NY Legis Ann, at 217) and, as noted in his message sending the amendatory bill to the Legislature
 
 (id.)
 
 and in his approval message
 
 (id.,
 
 at 388), were motivated by both the energy crisis and the passage of the no-fault statute.
 

 [3]
 

 . Ultimately, of course, individual experience will play a part in what a particular carrier is required to return to its policyholders
 
 (see,
 
 11 NYCRR 166-2.6 [b], [c]).