OPINION OF THE COURT
 

 ClPARICK, J.
 

 This appeal centers on a determination by the Superintendent of Insurance of the State of New York that petitioners
 
 *331
 
 violated Insurance Department Regulation 121 (11 NYCRR part 73) by placing claims-made liquor liability policies in New York through an excess line broker. Petitioners commenced this CPLR article 78 proceeding challenging the Superintendent’s finding that petitioners violated Regulation 121 a total of 1,497 times and that petitioners demonstrated "untrustworthiness” within the meaning of Insurance Law § 2110 (a), and seeking to vacate the penalty imposed by the Superintendent of $45 for each violation for a total fine of $67,365. We conclude that the Superintendent’s determination should in all respects be upheld.
 

 I.
 

 Petitioners John Paterno, Inc., by John V. Paterno as sublicensee and principal, and John V. Paterno individually (collectively, Paterno), are licensed by the State of New York as an insurance agent, broker and consultant. Among other things, Paterno brokers liability insurance policies for owners of New York restaurants, bars and taverns. Starting in 1985, the market to place insurance risks for restaurant, bar and tavern owners in New York contracted, causing Paterno to turn to excess line brokers, which are entities statutorily permitted under certain conditions to procure insurance from insurers not authorized to do business in New York
 
 (see,
 
 Insurance Law § 2105 [a]; § 2117 [h]). Specifically, during the period 1987 through 1991, Paterno, acting as the broker for various New York establishments, used an excess line broker, V.P. Management, to procure claims-made liquor liability insurance policies from Homestead Insurance Company (Homestead), an insurer not authorized to do business in New York.
 

 Claims-made policies provide liability coverage only when a claim is made against the insured within the policy period, whereas occurrence policies provide liability coverage for injury or damage that occurs within the policy period without regard to when the claim against the insured is asserted
 
 (see,
 
 11 NYCRR 73.0 [a];
 
 see generally,
 
 Ostrager and Newman, Insurance Coverage Disputes § 4.02 [b] [4], at 95-100 [8th ed]). The Insurance Department has concluded that "claims-made coverage tends to provide less protection than occurrence coverage [and] that claims-made coverage compared to occurrence coverage is a more complicated and confusing method of coverage that can create potential coverage gaps” (11 NYCRR 73.0
 
 *332
 
 [c]). As a result, the Insurance Department promulgated Regulation 121, which dictates that, subject to certain exceptions, "[c]laims-made coverage [may] not be provided in any policy issued or renewed in this State” (11 NYCRR 73.2). The claims-made policies involved in this proceeding — claims-made liquor liability policies — are not among those specifically excepted from the prohibition and are thus outlawed
 
 (cf.,
 
 11 NYCRR 73.2 [a]).
 

 As a general rule, the Insurance Law prohibits the sale in New York of insurance underwritten by insurers not authorized to conduct business in New York (Insurance Law § 2117 [a];
 
 see,
 
 11 NYCRR 27.0 [a]). A significant exception to this rule is that certain brokers, known as excess line brokers, are permitted by statute to procure insurance from unauthorized insurers
 
 (see,
 
 Insurance Law § 2105 [a]; § 2117 [h]), but only if they have been unable "after diligent effort” to procure the full amount of required insurance from authorized insurers (Insurance Law § 2118 [b] [1] [as amended by L 1986, ch 220, § 38], amended and redesignated § 2118 [b] [3] by L 1988, ch 630, § 3). Before 1994, and at all times relevant to this proceeding, Regulation 41 provided that "[n]o excess line broker shall place with an unauthorized insurer any risk, individual or group, which is not eligible for such placement under the provisions of the Insurance Law” (11 NYCRR 27.11 [repealed 1994]).
 
 *
 

 In April 1992, the Insurance Department charged Paterno with violating various statutes and regulations for its placement of Homestead policies, including placing claims-made policies in violation of Regulation 121 and engaging in untrustworthy or incompetent conduct within the meaning of Insurance Law § 2110 (a). After an administrative hearing, the Hearing Officer found that Paterno knowingly violated Regulation 121 by providing its clients with Homestead claims-made liquor liability policies, but recommended that no penalty be
 
 *333
 
 imposed on Paterno since it was acting in response to customer demand.
 

 By determination after hearing, the Superintendent modified the Hearing Officer’s findings to recite that between 1987 and 1991, Paterno procured 1,497 Homestead claims-made liquor liability policies through an excess line broker on behalf of clients in New York State. The Superintendent also determined that Paterno’s repeated violation of Regulation 121 demonstrated untrustworthiness within the meaning of Insurance Law § 2110 (a), concluding, "I do not endorse the suggestion that a licensee may bow to customer preference in deciding to violate a regulation of the Department.” After reciting various mitigating factors, the Superintendent imposed a penalty of $45 for each of the 1,497 violations for a total penalty of $67,365.
 

 Paterno thereafter commenced this CPLR article 78 proceeding for a judgment annulling the Superintendent’s determination. Upon transfer from Supreme Court, the Appellate Division upheld the Superintendent’s finding that Paterno had committed 1,497 violations of Regulation 121, but annulled the Superintendent’s determination of "untrustworthiness,” vacated the penalty of $45 per violation and remanded the matter for imposition of a fine not to exceed $10 per violation. The Appellate Division stated, "[W]e find, as did respondent’s own Hearing Officer, that the actions of the petitioners were dictated by 'market conditions’ and the absolute necessity of their clients to procure insurance coverage otherwise unavailable. In the circumstances, a determination that petitioners were 'untrustworthy’ is without foundation.” (217 AD2d 433.)
 

 This Court granted the Superintendent’s motion and Pater-no’s cross motion for leave to appeal, and we now modify by dismissing the CPLR article 78 petition in its entirety.
 

 II.
 

 Applicability of Regulation 121
 

 Paterno argues that the Superintendent erroneously interpreted Regulation 121 to apply to claims-made policies procured through excess line brokers. However, the Superintendent’s interpretation of Regulation 121, "if not irrational or unreasonable, will be upheld in deference to his special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision”
 
 (Matter of New York Pub. Interest Research Group v New
 
 
 *334
 

 York State Dept. of Ins.,
 
 66 NY2d 444, 448;
 
 see also, Matter of Medical Malpractice Ins. Assn. v Superintendent of Ins.,
 
 72 NY2d 753, 761-762).
 

 It is undisputed that Regulation 121, as a general rule, outlaws the placement of claims-made liquor liability policies in New York. What is disputed is whether this prohibition extends to claims-made policies procured through excess line brokers. In this regard, the Superintendent interpreted the former version of Regulation 41
 
 (see,
 
 11 NYCRR 27.11 [repealed 1994]), which prohibited excess line brokers from placing risks not "eligible” under law, as prohibiting the placement, through excess line brokers, of claims-made liquor liability policies. Based on the language of Regulations 41 and 121, the Superintendent’s interpretation is entirely reasonable
 
 (see,
 
 2 Dunham, New York Insurance Law § 19.08 [1], at 19-89, n 4 ["If the risk would not be 'eligible’ under some provision of the Insurance Law, it is illegal coverage and cannot be obtained”] [citing 11 NYCRR 27.11]). Moreover, the 1994 amendment of Regulation 41, which exempted excess line brokers from the reach of Regulation 121
 
 (see,
 
 11 NYCRR 27.9 [a]), does not diminish the reasonableness of the Superintendent’s position in this case involving the previously applicable regulations. Thus, the Appellate Division properly deferred to the Superintendent’s interpretation of the regulations and upheld the finding that Paterno violated Regulation 121 by placing in New York, through an excess line broker, claims-made liquor liability policies.
 

 Paterno nevertheless argues on its cross appeal that Regulation 121’s prohibition of claims-made policies does not apply to this case because Homestead is an unauthorized insurer beyond the regulatory reach of the Insurance Department. This argument is without merit. Whether Homestead is subject to the Insurance Department’s regulations is not relevant to this case. Paterno, a licensed New York insurance broker, is indisputably subject to these regulations and it is Paterno, not Homestead, which is charged with violating Regulation 121 by placing the prohibited claims-made policies.
 

 The Determination of Untrustworthiness
 

 The next issue is whether the Superintendent rationally determined that Paterno’s repeated violation of Regulation 121 demonstrated "untrustworthiness” within the meaning of Insurance Law § 2110 (a) (4). The Appellate Division, applying the wrong standard of review, overturned this finding based on its conclusion that Paterno acted according to the demands of
 
 *335
 
 the market and its intention was to serve, not deceive, its customers. However, the Superintendent had already addressed and rejected Paterno’s market demand defense by concluding, "I do not endorse the suggestion that a licensee may bow to customer preference in deciding to violate a regulation of the Department.”
 

 The Superintendent’s interpretation is not irrational or contrary to statute and accords with the commonsense notion that one who repeatedly violates rules, whether deliberately or carelessly, is less reliable than one who does not
 
 (see,
 
 11 NYCRR 27.0 [c] [2] ["failure by an excess line broker to comply with the requirements of this Part may be considered as evidence of * * * incompetency or untrustworthiness within the meaning of section 2110 (a) of the Insurance Law”]). Moreover, this interpretation is consistent with the type of showing that we have recognized as warranting a finding of untrustworthiness: "[T]here should be such factual presentation concerning acts or conduct by the licensee or his agent as would warrant a conclusion of unreliability, and which establishes that any confidence or reasonable expectation of fair dealing to the general public would be misplaced”
 
 (Matter of Gold v Lomenzo,
 
 29 NY2d 468, 477 [quoting
 
 Matter of Chiaino v Lomenzo,
 
 26 AD2d 469, 472] [involving regulation of real estate brokers]). Under the circumstances, the Appellate Division erred in not deferring to the Superintendent’s rational determination that Paterno’s repeated violation of Regulation 121 demonstrated "untrustworthiness” within the meaning of Insurance Law § 2110 (a)
 
 (see, Matter of New York Pub. Interest Research Group v New York State Dept. of Ins.,
 
 66 NY2d 444, 448,
 
 supra).
 

 The Number of Violations of Regulation 121
 

 Paterno contends that the Superintendent’s finding of 1,497 violations of Regulation 121, which was affirmed by the Appellate Division, is unsupported by substantial evidence. We disagree.
 

 At the administrative hearing, an Insurance Department examiner testified that his staff reviewed the Homestead claims-made liquor liability policies placed with New York clients in which Paterno acted as the retail or producing broker, and counted a total of 1,497 policies that violated Regulation 121. Contrary to Paterno’s argument on appeal, the examiner testified that he included in his calculation only those policies, whether exclusively liquor liability policies or special multiperil policies, that provided liquor liability coverage on a
 
 *336
 
 claims-made basis, which constitutes substantial evidence to support the Superintendent’s determination that Paterno committed 1,497 violations of Regulation 121.
 

 Judicial Review of Administrative Penalty
 

 Based on its annulment of the determination of untrustworthiness and its belief that Paterno’s violation of Regulation 121 was attributable to market demand, the Appellate Division vacated the penalty set by the Superintendent at $45 for each violation and remanded the matter to the Superintendent with the instruction that the penalty not exceed $10 per violation. We have already upheld the Superintendent’s determination of untrustworthiness and further conclude that the Appellate Division’s vacatur of the administrative penalty based on its de nova weighing of mitigating factors was inappropriate.
 

 Under CPLR 7803 (3), judicial review of an administrative punishment is guided by the "abuse of discretion” standard, which translates into a circumscribed judicial inquiry: the administrative penalty must be upheld unless it "shock[s] the judicial conscience”
 
 (Matter of Donati v Shaffer,
 
 83 NY2d 828, 830 [citing
 
 Matter of Pell v Board of Educ.,
 
 34 NY2d 222, 233]). In this case, the Superintendent took into account various mitigating factors and imposed a fine of $45 for each violation instead of revoking or suspending Paterno’s license
 
 (see,
 
 Insurance Law § 2110 [a]) or imposing the maximum authorized fine of $500 per violation
 
 (see,
 
 Insurance Law § 2127). The Superintendent’s penalty, well within the statutory range, did not constitute an abuse of discretion and therefore must be upheld.
 

 Accordingly, the order of the Appellate Division should be modified, with costs to appellant-respondent, by dismissing the petition in its entirety.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
 

 Order modified, etc.
 

 *
 

 Regulation 41 was amended in 1994 to exempt excess line brokers from Regulation 121’s prohibition of claims-made policies
 
 (see,
 
 11 NYCRR 27.9 [a]). The effect of this exemption is that excess line brokers are now permitted to procure claims-made policies from unauthorized insurers, as long as the risk was declined by three authorized insurers
 
 (see,
 
 Insurance Law § 2118 [b] [4]) and the insured was advised in writing, before placement, that in the event of insolvency of the unauthorized insurer, losses would not be covered by any New York State security fund
 
 (see,
 
 11 NYCRR 27.4 [e] [2]). The amendment, which took effect January 1, 1994, does not apply to this case which involves conduct from 1987 through 1991.