*724 OPINION OF THE COURT
George J. Silver, J.
In this action to recover first-party no-fault benefits, interest and attorney’s fees pursuant to New York’s Insurance Law and no-fault regulations, defendant Utica Mutual Insurance Company moves, pursuant to CPLR 3212, for an order granting it summary judgment dismissing plaintiff Allstate Social Work and Psychological Services, PLLC’s complaint on the ground that plaintiffs assignors failed to appear for properly scheduled independent medical examinations (hereinafter IMEs) and examinations under oath (hereinafter EUOs) and thus failed to comply with conditions precedent of the insurance policy.
Chad LaPlate, defendant’s no-fault specialist, avers that defendant’s Special Investigative Unit (hereinafter SIU) investigated the motor vehicle accident that allegedly occurred on May 23, 2003 and which gave rise to the instant claims. As a result of that investigation, defendant’s SIU determined that the alleged loss was the result of an intentional act and that material misrepresentations had been made in the presentation of the claims. Defendant thereafter assigned the claims to Hudson Valley Medical Consultants (hereinafter HVMC) for the scheduling of IMEs of plaintiffs assignors. Jennifer Harvey, an employee of HVMC, avers that HVMC is an entity that is involved in the scheduling of IMEs on behalf of insurance companies. According to Ms. Harvey, HVMC acts as an intermediary between the insurance company and the examining physician, dentist or psychologist by scheduling IME appointments and then securing the IME report from the examining doctor. Ms. Harvey avers that the psychological IMEs of the assignors were scheduled with Moses Weksler, Ph.D., for August 27, 2003. The letters scheduling the IMEs were prepared and signed by Ms. Harvey and mailed on August 15, 2003. Ms. Harvey states that it is HVMC’s procedure to have an employee prepare and print the IME scheduling letter and the address label for each scheduled IME. The employee ensures that the address label is correct, places the scheduling letter in the envelope, affixes the address label to the envelope and applies the proper postage. The envelopes containing the scheduling letters are placed in an official postal repository on a daily basis. Helen Sickler, the office manager for Moses Weksler, Ph.D., states in her affidavit that neither assignor appeared at Dr. Weksler’s Brooklyn office on August 27, 2003 and that the assignors’ nonappearances were reported to HVMC. On August 28, 2007, Ms. Harvey *725 scheduled a second IME for both assignors to be held on September 11, 2003, again at Dr. Weksler’s Brooklyn office. According to Ms. Sickler, both assignors again failed to appear at Dr. Weksler’s office. On October 9, 2003 defendant issued two denials, one for each assignor, denying plaintiffs claims due to the failure of the assignors to appear for the two scheduled psychological IMEs.
Defendant thereafter retained the law firm of Bruno, Gerbino & Soriano, LLP to schedule and conduct EUOs of defendant’s insured, the driver of the motor vehicle and the assignors. According to defendant’s attorney, EUOs were duly scheduled for October 7, 2003, October 10, 2003, October 28, 2003 and December 23, 2003. The assignors failed to attend the EUOs and on January 29, 2004 defendant issued a second set of denials based upon the assignors’ nonappearances.
In opposition, plaintiff argues that defendant has failed to establish that the assignors violated the policy conditions by failing to appear for the psychological IMEs because, under the express unambiguous terms of the insurance contract, the assignors were only obligated to submit to a medical examination by a physician. Plaintiff contends that licensed psychologists like Dr. Weksler are not physicians as the term is defined by the Education Law, therefore the assignors’ failure to appear for the scheduled IMEs was not a violation of the insurance policy and defendant’s denial of plaintiffs claims was improper. Plaintiff raises no issue as to the sufficiency of defendant’s proof that the IME request letters were mailed by HVMC in accordance with a standard office practice and procedure and in accordance with the time periods delineated in the no-fault regulations. Nor does plaintiff challenge the sufficiency of defendant’s proof of the assignors’ nonappearances at the IMEs.
Plaintiff further contends that the EUO scheduling letters dated September 30, 2003, October 1, 2003 and October 13, 2003 are defective on their face because they failed to inform the assignors that they would be reimbursed for any loss of earnings or reasonable transportation expenses incurred in complying with the requests. Plaintiff also argues that the December 10, 2003 EUO scheduling letter is defective because the defendant improperly scheduled the EUOs to be held in Melville, New York, which plaintiff argues was not reasonably convenient to the assignors who reside in Brooklyn. In the alternative, plaintiff argues that if the language of the December 10, 2003 EUO scheduling letter is sufficient, the letter should *726 be treated as a first request for additional verification. Since defendant failed to issue a follow-up request to the December 10, 2003 scheduling letter, plaintiff contends, defendant failed to comply with the follow-up verification requirements outlined in the regulations. Finally, plaintiff informs the court that it did not cross-move for summary judgment “due to insufficient time to file the motion”[1] but nevertheless requests that the court search the record and grant summary judgment in its favor.
Defendant argues in reply that this court previously denied plaintiff’s motion for summary judgment. Defendant also concedes that Dr. Weksler is not a physician as defined by the Education Law but argues that the endorsement’s definition of “medical expense” includes all professional health services, not only medical services provided by physicians. Since the legislature included medical expenses for all professional health services as part of covered basic economic loss, defendant reasons, it also intended to permit any health care provider to perform IMEs.
Analysis
“Pursuant to Insurance Law § 5103 (d), the Legislature empowered the Superintendent of Insurance to promulgate regulations establishing minimum benefit standards for policies of insurance providing coverage for the payment of first-party benefits and to set standards for the payment of first-party benefits by self-insurers. Pursuant to this authority, the Superintendent promulgated Insurance Department Regulations (11 NYCRR) § 65-1.1, which sets forth the basic form of the ‘Mandatory Personal Injury Protection Endorsement’ which must be included in every owner’s policy of liability insurance issued on a motor vehicle in this state” (Alleviation Supplies Inc. v Enterprise Rent-A-Car, 12 Misc 3d 787, 790 [Civ Ct, Richmond County 2006]).
The mandatory personal injury protection endorsement (hereinafter endorsement) provides, in pertinent part, that the “eligible injured person shall submit to medical examination by physicians selected by, or acceptable to, the Company, when, and as often as, the Company may reasonably require” (11 NYCRR 65-1.1 [d] [Conditions] [Proof of Claim; Medical, Work Loss, and *727 Other Necessary Expenses]).[2] The appearance of the insured for IMEs at any time is a condition precedent to the insurer’s liability on the policy (Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 35 AD3d 720 [2d Dept 2006]). The term physician is not defined in the endorsement but the Education Law provides that “[o]nly a person licensed or otherwise authorized under this article shall practice medicine or use the title ‘physician’ ” (Education Law § 6522). Defendant concedes in its reply that a licensed psychologist such as Dr. Weksler is not a physician. The question then is may any health provider perform an IME of an eligible injured person or, as the endorsement appears to require, only a physician?
Though there appears to be no case law addressing the point, in an opinion letter dated March 12, 2004, the State Insurance Department answered the following question:
“When a No-Fault eligible person is being treated by a chiropractor and the person’s insurer has requested a medical examination (‘IME’) of that person in order to evaluate the medical necessity of the chiropractic services performed, must the medical examination be performed by a chiropractor, or may it be performed by a medical doctor?” (2004 Ops Gen Counsel NY Ins Dept No. 04-03-10.)
In holding that an “insurer’s medical examination of an eligible injured person to evaluate the medical necessity of health services provided by a chiropractor may be performed by a medical doctor, and need not be performed by a licensed chiropractor” (id.) the Insurance Department stated “[t]here is no requirement in the regulation that a claim denial must be based upon a medical examination conducted by a health provider of the same speciality area as the treating health provider” (id.). Implicit in the Insurance Department’s interpretation, which is entitled to great deference unless it is “irrational or unreasonable” (Matter of John Paterno, Inc. v Curiole, 88 NY2d 328, 333 [1996], quoting Matter of New York Pub. Interest Research Group v New York State Dept, of Ins., 66 NY2d 444, 448 [1985]; cf. Matter of Gaines v New York State Div. of Hous. & Community Renewal, 90 NY2d 545, 548-549 [1997]), is that an independent medical examination of an eligible injured person may be performed either by a physician, as the term is defined in the Education Law and used in the endorsement, or by any other *728 licensed health provider selected by or acceptable to the insurer. It is for the court or an arbitrator to “consider the qualifications of the health provider performing the IME in determining the validity of a claim denial” (2004 Ops Gen Counsel NY Ins Dept No. 04-03-10). A contrary conclusion would frustrate the core objective of the no-fault scheme by limiting the universe of health providers who could perform IMEs, thereby delaying the processing of no-fault claims (see Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 35 AD3d 720 [2006]).
The affidavits submitted by defendant are sufficient to establish that defendant’s initial IME requests, its follow-up IME requests and its denial of claim were mailed pursuant to a standard office practice and procedure, and that the assignors failed to appear for the IMEs (Quality Health Prods., P.C. v Progressive Ins. Co., 20 Mise 3d 143[A], 2008 NY Slip Op 51757[U] [App Term, 2d & 11th Jud Dists 2008]; Post Traumatic Med. Care, P.C. v Progressive Cas. Ins. Co., 21 Misc 3d 128[A], 2008 NY Slip Op 51954[U] [App Term, 2d & 11th Jud Dists 2008]). The court, therefore, need not address plaintiffs arguments concerning the sufficiency of defendant’s EUO requests.
Accordingly, it is hereby ordered that defendant’s motion for summary judgment dismissing plaintiffs complaint is granted.

. See attorney’s affirmation in opposition.

. Since the endorsement is promulgated by the Superintendent of Insurance, and is not drafted by the insurer, plaintiffs argument that any ambiguity in the endorsement must be construed against the insurer is incorrect.