*248 OPINION OF THE COURT
Bernard J. Fried, J.
Plaintiffs Federated Retail Holdings, Inc. and Lord & Taylor LLC (together, Macy’s) move for a determination as to whether they have cured the self-insured retention default under their commercial lease with defendant, and whether defendant Weatherly 39th Street, LLC (Weatherly) is entitled to terminate the lease between the parties based on the termination notice served on Macy’s on November 30, 2010.
This case involves a commercial lease entered into by the parties’ predecessors, dated April 1, 1986. (Aff of Tim Schwartz, exhibit A.) One provision of that lease required the tenant, Macy’s, to acquire commercial general liability insurance for set amounts of coverage. Although Macy’s did acquire commercial general liability insurance, it retained a self-insurance provision, which, according to Weatherly, violated the terms of the lease because it left the tenant personally responsible for one million dollars of any potential claim. Hence, according to Weatherly, Macy’s failed to acquire the necessary insurance mandated by the lease.
On November 3, 2006, Weatherly served Macy’s with a “Notice of Default.” (Motion, exhibit A.) According to that notice, Macy’s violated the provisions of section 9.01 of the lease by subletting the premises. Macy’s was given a period in which to cure that alleged lease violation, also pursuant to the lease provisions.
By order to show cause, dated November 29, 2006, Macy’s moved for a preliminary injunction to preserve the status quo and permit it to contest the validity of the alleged sublease violation (Yellowstone injunction). On February 23, 2007, Macy’s motion was granted, and Weatherly was enjoined from taking any further action to terminate the lease pending the final determination of the action.
Prior to the issuance of the injunction, a hearing was held on February 23, 2007, at which time the injunction was held applicable to any new and different lease default allegations that Weatherly might make. (Motion, exhibit D.) This issue was addressed because, prior to the hearing date, on February 6, 2007, Weatherly sought leave to issue a new notice of default based on the contention that Macy’s had defaulted under the lease’s insurance provisions by obtaining insurance policies that contained self-insured retentions. In its purported new notice of *249 default, Weatherly specifically stated that the alleged insurance defaults “can be cured by your providing to Weatherly retroactive insurance coverage eliminating the self-insurance aspects and aggregates and naming Weatherly as a named insured.” (Motion, exhibit G.) In addressing this issue explicitly, Weatherly was directed to assert any newly alleged lease defaults in its answer and counterclaims to the instant matter. (Motion, exhibit D.) This order was not appealed.
On March 15, 2007, Weatherly served its answer and counterclaims, which included, in counterclaims numbered “first” through “sixth,” the alleged breaches of the insurance provisions of the lease based on Macy’s acquiring insurance policies with self-insured retentions.
In September of 2008, Weatherly moved for partial summary judgment on its counterclaims, and Macy’s cross-moved for partial summary judgment to dismiss those counterclaims. On April 3, 2009, Weatherly’s motion was denied, and Macy’s cross motion, asserting that there was nothing in the lease that prohibited Macy’s from acquiring commercial general liability insurance with a self-insured retention provision, was granted. (Motion, exhibit I.) Weatherly appealed this order, arguing that, among other things, not only was Macy’s in default of the insurance provision of the lease, but also that Macy’s should be denied any further opportunity to cure. (Motion, exhibit K.)
On October 28, 2010, the First Department held that Macy’s insurance policies did not comport with the requirements of the lease, because they contained self-insured retention provisions, and that such defect was not cured by Macy’s acquiring fronting policies, because those policies, which Macy’s acquired after the start of the instant litigation, only removed the self-insured retention provisions in Macy’s primary policies, but not its umbrella policies. In pertinent part, it stated that Macy’s “time to cure will commence to run upon service on [Macy’s] of a copy of this order with notice of entry.” (77 AD3d 573, 573 [2010]; motion, exhibit O.) Weatherly then moved for a clarification of this ruling, but the motion for clarification was denied on March 9, 2011.
Following the appellate decision, Macy’s negotiated with its insurers to remove the self-insured retention provisions from all of its policies. In substance, the insurer agreed to be responsible, retroactively, for all claims made during the period in which the policies were in effect.
On November 30, 2010, Weatherly notified Macy’s that Macy’s had failed to remove the self-insured retention default *250 under the lease and, therefore, Weatherly elected to terminate the lease within 30 days of Macy’s receipt of the letter. (Motion, exhibit R.) In that letter, Weatherly asserted that Macy’s attempt to remove retroactively the self-insured retention provisions of its policies violated New York insurance law.
In the instant motion, Macy’s argues that it is permitted to remove self-insured retention provisions retroactively and, if it were not, it would render meaningless the First Department’s order granting it cure time. Hence, the issue for resolution is whether a self-insured retention provision may be removed retroactively from an existing insurance policy by endorsement.
The commercial general insurance policies that Macy’s initially obtained provide, in pertinent part:
“This policy applies only if (1) the Bodily Injury or Property Damage is caused by an Occurrence that takes place anywhere, and the Bodily Injury or Property Damage occurs during the Policy period (2) the Personal Injury and Advertising Injury is caused by an Occurrence that takes place anywhere arising out of your business, but only if the Occurrence was committed during the Policy Period . . . .” (Aff of Tim Schwartz, exhibit E.)
It is Macy’s contention that these policies are “occurrence-based” policies, capable of being amended retroactively to include occurrences that occur during the period of the policies’ application.
Macy’s has submitted the affidavit of Teresa M. Schell, the regional vice-president and managing director, national sales, of Macy’s insurer. In her affidavit, Schell states:
“At Macy’s request, following the Appellate Division’s October 28, 2010 Order, Liberty Mutual issued endorsements to its commercial general liability policies for the years 2007-2010 (the ‘Endorsements’), effective as of the issuance date of each of the policies. The Endorsements increased the per occurrence limit under the policies from $1 million to $3 million. From their inception, the subject insurance policies did not contain any self-insured retention, and were specific to the property located at 16-18 39th Street, New York, NY 10018 (the ‘Annex’). By prior endorsement (see Schwartz Aff. Exhibits N and O), the ‘deductible- damages’ endorsement was removed from the policies, thereby removing the deductible from the policies.”
*251 Macy’s has also submitted the affidavit of Ronald H. Mathewson, an assistant vice-president, national accounts, of the Excess Casualty Division of Chartis, the entity that underwrote Macy’s umbrella policies, who states:
“At Macy’s request, after October 28, 2010 (when I understand is the date on which the Appellate Division issued an order in this case), Excess Casualty caused National Union to issue endorsements to Macy’s National Union umbrella insurance policies for the years 2007-2010. The endorsements were numbered 23 through 26 inclusive for policy number 9834627; 24 through 27 inclusive for policy number 9835527; and 30 through 33 inclusive for policy number BE2227105 (the ‘National Union Endorsements’). Each of the National Union Endorsements, the wording of which speaks for itself, was issued with an effective date that is the same as the effective date of the respective policy to which it attached.”
Macy’s also argues that, in the termination notice of November 2010, Weatherly claims that the endorsements expose Weatherly to increased risks because Macy’s insurers may, at some point, deny coverage based on the “known loss doctrine.” Macy’s states that the known loss doctrine only applies to potential losses that were known but undisclosed at the time the insurance policy was issued; however, according to Macy’s, since Macy’s has averred that it is not aware of any such loss, such doctrine is inapplicable.
In opposition, Weatherly argues that the policies obtained by Macy’s are “claims-made” policies which, according to New York law, may not be retroactively amended to remove the self-insured retention provisions. Further, Weatherly asserts that the effective date for Macy’s occurrence policies, which eliminates the self-insured retention provisions, is in November of 2010, not the dates on which the original policies started their coverage.
In support of its contentions, Weatherly cites an opinion of the General Counsel of the New York State Insurance Department, which states, in pertinent part:
“As for occurrence coverage, an occurrence policy may only cover a period of time prior to the effective date of the insurance policy if: (1) the insured is switching from an expiring claims-made policy to occurrence coverage; and (2) the insurance does not *252 cover any existing claims or known occurrences. The Department allows this only for the purpose of helping an insured transition from claims-made insurance to occurrence policy coverage because of the substantially greater risk exposure and adverse selection concerns.
“Accordingly, coverage for events that occurred during a contractually specified period of time that is prior to the effective date of the occurrence policy may not be issued to a person who was previously self-insured and thus has uninsured exposure for prior acts or occurrences. Since the business about which the broker inquired had no insurance previously, it may not purchase an occurrence policy that covers events that occurred prior to the effective date of the policy.” (Ops Gen Counsel NY Ins Dept [Apr. 27, 2007] available at http://www.ins.state. ny.us/ogco2007/rg070414.htm; aff of Tim Schwartz, exhibit T.)
It is Weatherly’s assertion that Macy’s policies were claims-made policies and, hence, cannot be switched to occurrence policies retroactively to insure that liability for which Macy’s was uninsured.
In reply, Macy’s argues that its policies are occurrence policies because, unlike claims-made policies, its policies allow for coverage as long as the occurrence takes place on or after the effective date of the policies, regardless of when the claim is asserted. Therefore, since their policies are occurrence-based, they are capable of retroactive endorsement to eliminate the self-insured retention provisions.
Both sides have provided conflicting affidavits from alleged experts who opine as to the legal implications of the policies in question.
Macy’s motion is granted.
11 NYCRR 73.1 (a) defines a claims-made policy as:
“Claims-made policy means an insurance policy that covers liability for injury or damage that the insured is legally obligated to pay (including injury or damage occurring prior to the effective date of the policy, but subsequent to the retroactive date, if any), arising out of incidents, acts or omissions, as long as the claim is first made during the policy period or any extended reporting period.”
11 NYCRR 73.1 (j) defines an occurrence policy as:
“Occurrence policy means an insurance policy that *253 covers liability for injury or damage that the insured is legally obligated to pay arising out of incidents, acts or omissions that occurred during the policy period, and where a claim may be made during or subsequent to the policy period.”
11 NYCRR 73.1 (b) defines retroactive date as:
“Retroactive date means a date concurrent with the effective date of the policy or a particular date prior to the effective date of the policy upon which the insurer and insured agree in the policy that policy coverage will be applicable.”
“Claims-made policies provide liability coverage only when a claim is made against the insured within the policy period, whereas occurrence policies provide liability coverage for injury or damage that occurs within the policy period without regard to when the claim against the insured is asserted.” (Matter of John Paterno, Inc. v Curiale, 88 NY2d 328, 331 [1996].)
“[0]ur analysis begins with the well-established principles governing the interpretation of insurance contracts, which provide that the unambiguous provisions of an insurance policy, as with any written contract, must be afforded their plain and ordinary meaning, and that the interpretation of such provisions is a question of law for the court.” (Broad St., LLC v Gulf Ins. Co., 37 AD3d 126, 130 [1st Dept 2006]; Matter of Ideal Mut. Ins. Co. [Superintendent of Ins. of State of N.Y. — Harbour Assur. Co. of Bermuda], 231 AD2d 59 [1st Dept 1997].)
The plain language of the insurance policies in question states that coverage is provided for claims that occur during the policies’ periods, and only if the occurrence was committed during said policies’ periods. Therefore, the insurance policies acquired by Macy’s, from 2007 onwards, were occurrence policies as defined in 11 NYCRR 73.1 (j).
Weatherly argues that these policies cannot retroactively be amended to remove their self-insured retention provisions, basing this contention on the assumption that the effective date of the coverage is November 2010, the date on which the endorsements took effect, rather than 2007, the date on which the policies took effect.
The cases cited by Weatherly to support its position are distinguishable. In those cases, the insureds had not maintained *254 any insurance, pursuant to their lease obligations, and were attempting to acquire insurance prospectively. (Kyung Sik Kim v Idylwood, N.Y., LLC, 66 AD3d 528 [1st Dept 2009] [plaintiffs’ attempt to acquire insurance during the cure period prospectively for the remainder of the lease unavailing]; Kramer v Bohensky, 27 Misc 3d 1237[A], 2010 NY Slip Op 51089[U] [Sup Ct, Kings County 2010] [failure to provide insurance an incurable breach of the lease].)
Conversely, in the instant matter, Macy’s always had insurance, and merely amended their existing policies to provide for greater insurance. Moreover, courts have found valid insurance endorsements that retroactively cover real estate leases. (National Union Fire Ins. Co. of Pittsburgh, Pa. v Red Apple Group, 309 AD2d 657 [1st Dept 2003]; National Union Fire Ins. Co. of Pittsburgh, Pa. v Red Apple Group, 281 AD2d 296 [1st Dept 2001].)
In addition, in its notice of termination in November of 2010, Weatherly itself stated that the alleged self-insured retention default could be cured by retroactive endorsement. It would be unjust to allow it to change its position now that Macy’s has relied on that statement.
The endorsements acquired by Macy’s in 2010 are amendments to their existing occurrence policies, not new occurrence policies, and, consequently, the effective date of coverage begins on the effective date of the original policy. Therefore, this comports with the opinion of the Insurance Department quoted above.
In reaching this conclusion, there is no need to consider the arguments regarding the First Department’s statement regarding the cure period. First, that court was not asked to determine whether the alleged breach could be cured, so its allowance of a cure period does not impact the effectiveness or possibility of a cure; and second, since Macy’s acquired the endorsement well within 30 days of being served with a copy of the decision, it is unnecessary to speculate whether the original injunction was extended or a new cure period was ordered.
Lastly, the known loss doctrine does not apply to the facts of this case. That doctrine only applies when the insured knows of a loss and fails to disclose it to the insurer. Macy’s has affirmed that it is unaware of any risk of loss, rendering such doctrine irrelevant. (National Union Fire Ins. Co. of Pittsburgh, Pa. v Xerox Corp., 25 AD3d 309 [1st Dept 2006].)
*255 Based on the foregoing, it is hereby ordered that plaintiffs’ motion is granted; and it is further adjudged and declared that plaintiffs have cured the default of their lease with defendant regarding the self-insured retention provisions of their commercial general insurance policies; and it is further adjudged and declared that defendant may not terminate its lease with plaintiffs based on the above-referenced lease default.