[905 NYS2d 880]

DYNAMIC MEDICAL IMAGING, P.C., as Assignee of Staffa Pasqualino, Plaintiff, v STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

District Court of Nassau County, First District, July 15, 2010

**APPEARANCES OF COUNSEL**

*Rivkin Radler LLP* for defendant. *Friedman, Harfenist, Kraut & Perlstein* for plaintiff.

## OPINION OF THE COURT

FRED J. HIRSH, J.

The defendant moves for summary judgment.

## Background

This action raises the issue of whether an insurer can obtain documentary material relating to a potential *Mallela* defense in a demand for an examination under oath (EUO).

Staffa Pasqualino was injured in a motor vehicle accident on July 15, 2007. Richard Amato, D.C., Staffa's treating chiropractor, referred Staffa for a lumbar and cervical MRI and 3-D renderings that were performed at Dynamic Medical Imaging, P.C. on August 24, 2007.

Staffa assigned his right to receive no-fault benefits for these tests to Dynamic.

Dynamic submitted its bills for these services to State Farm Mutual Automobile Insurance Company for payment. State Farm acknowledges receipt of the bill for the lumbar MRI and 3-D rendering on September 24, 2007 and receipt of the bill for the cervical MRI and 3-D rendering on September 26, 2007.

State Farm sent a letter to Dynamic and Steven Brownstein, M.D. dated October 8, 2007 demanding Dr. Brownstein appear for an EUO at the office of Rivkin Radler LLP, 926 RexCorp Plaza, Uniondale, New York on October 30, 2007 at 10:00 A.M.

The letter advised Dr. Brownstein that if the date, time or place for the EUO were inconvenient, he should contact State Farm to reschedule the EUO at a time, place and/or date that was reasonably convenient for Dr. Brownstein. The letter further advised Dr. Brownstein State Farm would reimburse Dr. Brownstein for any income lost and travel expenses incurred as a result of his appearance for the EUO.

The mailing log produced by State Farm indicates the letter was mailed to Dynamic and Dr. Brownstein by certified mail, return receipt requested, at three different addresses. The first address, P.O. Box 87, Springfield, New Jersey 07081-0087, is the billing address for Dynamic. The second address, 73-36 Grand Avenue, Maspeth, New York 11378, is the address of the Dynamic facility at which the MRIs were performed. The papers

do not establish why the letter was sent to the third address, 8 Linda Lane, Springfield, New Jersey 07081.[1]

The EUO letter requested Dr. Brownstein to produce seven days prior to the EUO the following information:

"(i) documents evidencing ownership of the P.C., at the time of the treatment for which you seek payment, by one or more licenced professionals, including but not limited to a copy of the certificate of incorporation for the P.C., receipts for filing, stock certificates, and the stock ledger for the P.C.

"(ii) documents relating to the income and expenses of the P.C., including but not limited to tax returns and general ledgers of the P.C. for the past twelve months.

"(iii) a list of the individuals who provided and/or supervised the health care services for which you seek payment, identification of the type of professional license each individual holds, and documents (i.e, W-2, 1099, etc.) identifying the relationship between the individual and the P.C. (e.g. whether the individual is an employee or independent contractor and how that individual is compensated).

"(iv) a list of days of the week and hours that any owner of the P.C. provides or supervises services for the P.C. during the period for which payment is sought for services rendered.

"(v) all documents, including all schedules, attachments or addenda, relating to the relationship between the P.C., and/or any entity [or] individual that leases equipment or space to or from the P.C., or provides management, consulting, administrative or billing services to the P.C. and any payments made to any person or entity that rendered such services to the P.C.

"(vi) complete, sign and return the enclosed NF-3 form."[2]

The letter advises Dynamic and Dr. Brownstein if they have previously provided this information and/or documentation, it need not be provided for this EUO.

---

1. A check of this address on Google maps indicates Linda Lane is a cul-de-sac in a residential neighborhood.

2. It does not appear that an NF-3 form has any applicability to this action. An NF-3 is the New York Motor Vehicle No-Fault Insurance Law Verification of Hospital Treatment form. (11 NYCRR part 65, subpart 65-4, Appendix 13.)

The letter advises Dynamic and Dr. Brownstein State Farm will not pay the bills until the requested documentation has been provided and either Dr. Brownstein or an appropriate representative from Dynamic has appeared for the EUO. The letter then stated failure to provide the requested documentation and/or failure to appear for the EUO will result in State Farm disclaiming coverage for treatment provided to the claimant.

Neither Dr. Brownstein nor any other representative of Dynamic appeared for the EUO scheduled for October 30, 2007. The requested documentation was not provided.

State Farm sent a letter dated November 7, 2007 as a second request for an EUO to Dynamic and Dr. Brownstein. This letter referenced the October 30, 2007 EUO and Dr. Brownstein and Dynamic's failure to attend. The letter advised Dynamic and Dr. Brownstein they were being given one last chance to appear for an EUO. The letter scheduled the EUO for November 19, 2007 at the offices of Rivkin Radler LLP. The letter requested Dynamic and/or Dr. Brownstein to call in advance to confirm attendance. The letter again advised Dynamic and Dr. Brownstein that if the date, time and place was inconvenient to call and reschedule the EUO for a date, time and/or place that was more convenient. The letter advised that State Farm would reimburse the person who appeared at the EUO for lost earnings and travel expenses. It also requested the production of the same documents demanded in the October 8, 2007 letter. Finally, the letter advised Dynamic and Dr. Brownstein appearance at the EUO was a condition of coverage and failure to appear will result in the denial of all claims submitted on behalf of Staffa.

The November 7, 2007 letter was addressed to Dr. Brownstein and Dynamic at the same addresses as the October 8, 2007. The mail log produced by State Farm indicates these letters were mailed on November 8, 2007.

Neither Dr. Brownstein nor a representative of Dynamic appeared for the EUO scheduled for November 19, 2007.

Neither Dynamic nor Dr. Brownstein submitted papers in which they denied receipt of either the October 8, 2007 or November 7, 2007 letters. Nothing has been produced that would indicate the letters have been returned by the United States Postal Service as undeliverable as addressed.

State Farm issued a denial dated December 12, 2007 denying payment for the lumbar and cervical MRIs and the 3-D renderings. The basis for the denial was the failure to appear for an EUO and failure to comply with 11 NYCRR 65-3.16 (a) (12).

Dynamic commenced this action on January 24, 2008 seeking to recover the amount due for the MRIs and 3-D renderings. Issue has been joined.

## Discussion

A no-fault insurance carrier may request an eligible injured person or that person's assignee to submit to an examination under oath as may reasonably be required. (11 NYCRR 65-1.1.) The examination under oath shall be conducted at a place and time reasonably convenient for the applicant. (11 NYCRR 65-3.5 [e].) A request for an examination under oath "must be based upon the application of objective standards so that there is specific objective justification supporting the use of such examination." (11 NYCRR 65-3.5 [e].)

Appearance at a properly demanded EUO is a condition precedent to an insurance carrier's liability to pay no-fault benefits. (*Five Boro Psychological Servs., P.C. v Progressive Northeastern Ins. Co.*, 27 Misc 3d 141[A], 2010 NY Slip Op 50991[U] [App Term, 2d, 11th and 13th Jud Dists 2010].)

No-fault is a statutory/regulatory system. (*See Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854 [2003].) No-fault is in derogation of the common law. (*East Acupuncture, P.C. v Allstate Ins. Co.*, 61 AD3d 202 [2d Dept 2009].) The rights of an insurer are limited to those expressly provided for by the statute and regulations. (*Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d 274 [1997], *rearg denied* 90 NY2d 937 [1997].) The regulations provide for an examination under oath. The term "examination under oath" is not defined by the no-fault regulations. Words used in regulations that are not specifically defined in the regulations are to be given their ordinary meaning. (*Matter of Oefelein v Town of Thompson Planning Bd.*, 9 AD3d 556 [3d Dept 2004]; *Matter of Parker v Kelly*, 140 AD2d 993 [4th Dept 1988]; *McCarter v Beckwith*, 247 App Div 289 [2d Dept 1936]; McKinney's Cons Laws of NY, Book 1, Statutes § 76.) Examination is defined as the questioning of a witness by an attorney. (*See* Law.Com Law Dictionary.) Examination can also be defined as a formal interrogation. (Webster's Unabridged Dictionary 673 [2d ed 1998].) Therefore, the term "examination under oath" as used in the no-fault regulations means the insurer can request the injured party or the assignee of the injured party to appear and give oral testimony after having been sworn or under affirmation.

The regulations do not provide an insurer with the right to obtain written documentation other than such documentation

as may be demanded as verification. In addition to appearing for an examination under oath, the assignee can be compelled to execute a written proof of claim under oath and provide other pertinent information as may assist the insurer in determining the amount due and payable. (11 NYCRR 65-1.1.) The regulations do not give the insurer the right to ask an assignee to produce documents relating to the corporate structure or finances of a medical provider. (11 NYCRR 65-3.5 [a].) Upon receipt of the completed verification form, the insurer can request additional verification. (11 NYCRR 65-3.5 [b].) The regulations only permit the insurer to obtain written information to verify the claim. (11 NYCRR 65-3.5 [c]; *see generally V.M.V. Mgt. Co., Inc. v Peerless Ins.*, 15 AD3d 647 [2d Dept 2005].) Nothing in the no-fault regulations permits an insurer to request an assignee to produce corporate organizational and financial documents a week in advance of an EUO.

An examination under oath permits the insurer to question the injured party or its assignee regarding the claim. While an examination under oath has been treated by the courts as a condition precedent to coverage, the no-fault regulations treat the examination under oath as a form of verification. Thus, where a carrier properly demands an examination under oath, "the verification is deemed to have been received by the insurer on the day the examination was performed." (11 NYCRR 65-3.8 [a] [1].) The insurer has 30 days from the day the EUO is conducted to pay or deny the claim. (*Id.*)

The purpose for demanding verification is to extend or toll the carriers time to pay or deny the claim so the carrier can obtain information regarding the claim. (*Hospital for Joint Diseases v New York Cent. Mut. Fire Ins. Co.*, 44 AD3d 903 [2d Dept 2007]; 11 NYCRR 65-3.5 [c]; 11 NYCRR 65-3.8 [a] [1].) The extension of time in which to pay or deny the claim is extremely important in circumstances in which the insurer is seeking information regarding a defense the insurer would be precluded from raising if the defense is not stated in a timely served denial. (*Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d 556 [2008]; *Lincoln Gen. Ins. Co. v Alev Med. Supply Inc.*, 25 Misc 3d 1019 [Nassau Dist Ct 2009].)

However, this rationale does not apply to a *Mallela* defense since a *Mallela* defense is nonprecludable. (*State Farm Mut. Auto. Ins. Co. v Mallela*, 4 NY3d 313 [2005].)

While *Mallela* has been called a fraudulent incorporation defense, the rationale underlying *Mallela* is that only an ap-

propriately licensed professional may be the owner of a professional corporation (Business Corporation Law § 1507), a professional limited liability company (Limited Liability Company Law § 1207) or a professional limited liability partnership (Partnership Law § 121-1500 [q]) and only licensed professionals can obtain payment of no-fault benefits. (11 NYCRR 65-3.16 [a] [12].) The *Mallela* defense permits an insurer to look behind a facially proper business structure to determine if persons not duly licensed to practice the profession are the actual owners of the medical provider. (*Matter of Andrew Carothers, M.D., P.C. v Insurance Cos. Represented by Bruno, Gerbino & Soriano, LLP*, 26 Misc 3d 448 [Civ Ct, Richmond County 2009].) If the provider is not owned by a licensed professional or if the provider is controlled by a nonprofessional, then the provider may not obtain payment of no-fault benefits. (*State Farm Mut. Auto. Ins. Co. v Mallela, supra.*)

If a carrier believes the provider/assignee is subject to a *Mallela* defense, the proper way to assert it is as an affirmative defense in its answer. (*New York First Acupuncture, P.C. v State Farm Mut. Auto. Ins. Co.*, 25 Misc 3d 134[A], 2009 NY Slip Op 52217[U] [App Term, 2d, 11th & 13th Jud Dists 2009].)

The document demand contained in State Farm's EUO letters to Dynamic and Dr. Brownstein are essentially a demand for pre-action discovery regarding a *Mallela* defense. CPLR 3102 (c) permits pre-action discovery only by court order and only to aid in bringing an action. Some of the documentation requested in the EUO letters State Farm might not be able to obtain even if it had been requested in a duly served notice for discovery and inspection.[3]

The oft-stated purpose of the No-Fault Law is to insure prompt payment for medical services rendered to persons injured in motor vehicle accidents. (*Fair Price Med. Supply Corp. v Travelers Indem. Co., supra; Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d 312 [2007]; *Presbyterian*

---

3. The EUO demand requests Dynamic produce its corporate tax returns. Disclosure of tax returns is disfavored since income tax returns contain confidential and private information. (*Walter Karl, Inc. v Wood*, 161 AD2d 704 [2d Dept 1990]; *Briton v Knott Hotels Corp.*, 111 AD2d 62 [2d Dept 1985].) The party seeking to obtain production of income tax returns must make a strong showing of necessity and an inability to obtain the information contained in the income tax return from any other source. (*Abbene v Griffin*, 208 AD2d 483 [2d Dept 1994].) A party will not be required to produce tax returns if the information may be obtained from any other source. (*Samide v Roman Catholic Diocese of Brooklyn*, 5 AD3d 463 [2d Dept 2004].)

*Hosp. in City of N.Y. v Maryland Cas. Co., supra.*) Permitting an insurer to obtain what would be tantamount to full discovery regarding a *Mallela* defense as part of an EUO would defeat that purpose and is beyond the scope of the No-Fault Law and regulations relating to an EUO.

Permitting an insurer to demand what has been demanded by State Farm in this action for an EUO is fraught with the potential for abuse. (*See Unitrin Advantage Ins. Co. v Carothers*, 17 Misc 3d 1121[A], 2007 NY Slip Op 52100[U] [Sup Ct, NY County 2007]; *Gegerson v State Farm Ins. Co.*, 27 Misc 3d 1207[A], 2010 NY Slip Op 50604[U] [Nassau Dist Ct 2010].) An insurer should not be able to defeat no-fault claims by making an onerous and improper document demand relating to an EUO.

If an insurer has a reasonable basis for believing a medical provider cannot obtain payment of no-fault benefits because the provider is "fraudulently incorporated," then it should assert the defense in its answer and litigate the issue on the merits in the action brought by the provider for no-fault benefits. The insurer should move to consolidate all of the actions brought by the provider and have the issue of whether the provider is subject to a *Mallela* defense determined in one action. (*See Matter of Andrew Carothers, M.D., P.C. v Insurance Cos. Represented by Bruno, Gerbino & Soriano, LLP, supra.*) Alternatively, an insurer can commence a declaratory judgment action seeking a judgment declaring the provider ineligible to receive no-fault payments. (*See State Farm Mut. Auto. Ins. Co. v Mallela, supra.*)

While State Farm may have reason to believe Dynamic is not eligible to receive no-fault benefits for *Mallela* reasons, State Farm cannot use a palpably improper EUO demand not subject to court review as a basis for obtaining summary judgment. (*See Westchester Med. Ctr. v Progressive Cas. Ins. Co.*, 51 AD3d 1012 [2d Dept 2008].)

Since the EUO demand was improper, defendant's motion for summary judgment is denied.[4]

---

4. The court notes defendant has alleged a *Mallela* defense in its answer. Nothing in this decision should be interpreted to prevent the defendant from asserting or proving a *Mallela* defense or obtaining proper discovery from Dynamic in regard to this defense.