**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**Herbert RABINER, M.D., Metropolitan Radiological Imaging, P.C., Eric Hagerbrant, Imaging Arts Billing Services of America, Inc., Defendants.**

**No. 10 CV 365(SJ)(RER).**

United States District Court, E.D. New York.

Nov. 4, 2010.

Rivkin Radler LLP, by Barry I. Levy, Evan H. Krinick, Max Saulter Gershenoff, Uniondale, NY, for Plaintiff.

Hession, Bekoff & Cooper, LLP, by Andrew P. Cooper Garden City, NY, for Defendant.

## MEMORANDUM AND ORDER

STERLING JOHNSON, JR., Senior District Judge:

Defendants Eric Hagerbrant ("Hagerbrant"), Imaging Arts Billing Services, Inc. ("Billing Services"), and Imaging

Management Services of America, Inc. ("Management Services," collectively the "Management Company Defendants"), and Metropolitan Radiological Imaging, P.C. ("Metropolitan") and Herbert Rabiner, M.D. ("Dr. Rabiner"), move, pursuant to Federal Rules of Civil Procedure ("FRCP") §§ 12(b)(1) and 12(b)(6) to dismiss this action in its entirety, or in the alternative, to limit this action in accordance with N.Y. Civil Procedure Law & Rules ("NYCPLR") § 213, which places a six year statute of limitations on actions for fraud, or two years from when the fraud should have been discovered.

## BACKGROUND

On January 28, 2010, State Farm Mutual Automobile Insurance Company ("Plaintiff") commenced this action seeking to recover more than two million dollars ($2,000,000) that it alleges to have paid Metropolitan since April 4, 2002. Plaintiff asserts causes of action for common law fraud (second claim for relief), unjust enrichment (third claim for relief), and seeks a declaratory judgment stating that Metropolitan has no right to receive no-fault insurance payments from Plaintiff (first claim for relief).

Plaintiff's claims arise out of payments it has made since April 4, 2002 for radiology services allegedly rendered to Plaintiff's insureds for diagnostic purposes pursuant to New York State's no-fault insurance system (hereinafter "No Fault" or the "No–Fault Laws"). (Compl. ¶ 1). Plaintiff alleges that Metropolitan was ineligible to receive these payments because it was fraudulently incorporated by Hagerbrant through defendants Billing Services, a purported billing services company, and Management Services, a purported management and consulting services company. (Compl. ¶¶ 9–11, 26, 27). Plaintiff alleges that Dr. Rabiner, a physician licensed to

practice medicine in the State of New York who purports to own Metropolitan, allowed Hagerbrant to use his license to fraudulently incorporate Metropolitan and transfer its profits to the Management Company Defendants in violation of New York Business Corporation Law. (*Id.*). Plaintiff alleges that Dr. Rabiner has never had a true ownership interest in Metropolitan, and that at all times, all decision-making authority relating to the operation and management of Metropolitan rested with the Management Company Defendants. (Compl. ¶ 27, 29). Plaintiff further alleges that Dr. Rabiner and Metropolitan entered into a series of management, marketing, and billing agreements with the Management Company Defendants that allowed Hagerbrant to exercise illegal control over Metropolitan and siphon away the revenues Metropolitan received from No–Fault insurance payments from Plaintiff (and other insurance companies). (Compl. ¶¶ 27, 31–35).

Plaintiff claims that defendants' furthered their fraudulent scheme by submitting claims for services performed by independent contractors, who are ineligible to receive such payments under the No–Fault Laws. (Compl. ¶ 42). Metropolitan allegedly misrepresented that the services billed for were performed by its employees on claim forms it submitted to Plaintiff. (Compl. ¶¶ 42–47). Plaintiff argues that the claim forms were therefore fraudulent and designed to mislead Plaintiff. (Compl. ¶¶ 48, 49).

Defendants moved to dismiss the complaint pursuant to FRCP §§ 12(b)(1) and 12(b)(6) on May 10, 2010. In moving to dismiss, defendants argue that 1) the causes of action for a declaratory judgment, fraud, and unjust enrichment were preempted by New York Insurance Law § 5109, which defendants allege statutorily eliminated any private right of action; 2)

New York State Insurance Department's position regarding the eligibility of independent contractors to receive No–Fault benefits is "illogical" and should not be followed; and 3) New York's Civil Practice Law and Rules § 213 restricts Plaintiff's recovery until January 28, 2004.

### STANDARD OF REVIEW

■ In considering a motion to dismiss a complaint pursuant to FRCP Rule 12(b)(6), for a "failure to state a claim upon which relief may be granted," the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. Fed.R.Civ.P. 12(b)(1); *Bolt Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995). Dismissal is appropriate only where it appears beyond doubt that a plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *See id.* The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support her claims. *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). A district court must confine its consideration of a motion to dismiss "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. West-Point–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991).

Conclusory allegations, however, are insufficient to withstand a motion to dismiss. *See Manos v. Geissler*, 377 F.Supp.2d 422, 425 (S.D.N.Y.2005). Moreover, courts need not accept as true pleadings expressing legal conclusions, speculation and unsubstantiated allegations so broad and conclusory as to be meaningless. *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 120 (2d Cir.1982); *see also Smith v. Local 819*

*I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir.2002) (while the court must construe factual allegations in the light most favorable to the plaintiff, the court is not required to accept plaintiff's legal conclusions).

■ Similarly, in considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume that all of the factual allegations in the complaint are true. *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998), at 5 (*citing Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of a claim when the federal court "lacks jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) (*citing* Fed.R.Civ.P. 12(b)(1)).

### DISCUSSION

### I. Overview of New York State's No Fault Insurance Law

■ In 1973, the New York State Legislature enacted the Comprehensive Automobile Insurance Reparations Act (the "Act"). *See* N.Y. Ins. Law §§ 5101 et seq. (formerly N.Y. Ins. Law §§ 670 et seq.). The Act instituted a system of no-fault insurance that supplanted common-law tort actions for most victims of automobile accidents. *Medical Soc'y v. Serio*, 100 N.Y.2d 854, 860, 768 N.Y.S.2d 423, 800 N.E.2d 728 (2003). "The primary aims of this new system were to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the

courts and to provide substantial premium savings to New York motorists." *Id.*

Under New York's No–Fault Laws, the insured party is permitted to recover from insurers for "basic economic loss," including medical expenses, that arise out of the use or operation of an insured vehicle. N.Y. Ins. Law § 5102. Medical expenses are reimbursed based upon a fee schedule which specifies the charges permitted for specific services rendered by particular kinds of providers. *Id.* at § 5108; 11 N.Y.C.R.R. § 65–3.16. A "provider of health care services" is not eligible for reimbursement "if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such services in New York or meet any applicable licensing requirement necessary to perform such services in any other state in which such service is performed." *Id.* at § 65–3.16(a)(12).[1] This regulation was initially promulgated to take effect on September 1, 2001, but implementation was stayed by court order until April 4, 2002.

Relying on 11 N.Y.C.R.R. § 65–3.16(a)(12), the Court of Appeals in *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 794 N.Y.S.2d 700, 827 N.E.2d 758 (2005) ("*Mallela*"), held that fraudulently incorporated medical corporations were not entitled to reimbursement of No–Fault benefits and recognized that insurers could maintain a cause of action for fraud or unjust enrichment to recoup such payments. *Id.* There, State Farm alleged that various unlicensed individuals paid licensed physicians to use their names on paperwork filed with the State to establish medical service corporations. *Id.* at 319–320, 794 N.Y.S.2d 700, 827 N.E.2d 758. The Court noted that 11 N.Y.C.R.R. § 65–3.16(a)(12), specifically "excluded from the meaning of basic economic loss payments made to unlicensed or fraudulently licensed providers, thus rendering them ineligible for reimbursement." *Id.* at 320, 794 N.Y.S.2d 700, 827 N.E.2d 758. However, the Court determined that "no cause of action for fraud or unjust enrichment would lie for any payments made by the carriers before … April 4, 2002." *Id.* at 322, 794 N.Y.S.2d 700, 827 N.E.2d 758.

In 2005, shortly after the *Mallela* decision, New York State's Legislature passed an amendment to the No–Fault Laws. The amendment, New York State Insurance Law § 5109, requires the Superintendent of Insurance along with the Commissioner of Health and the Commissioner of Education, to create a process for decertifying certain health care providers and rendering said providers ineligible to request payment under the No–Fault Laws. Ins. Law § 5109 (Consol.2005) (effective August 2, 2005).

## II. Plaintiff Has Standing to Pursue Its Claim: § 5109 Does Not Appear to Eliminate Any Private Right of Enforcement

■ Defendants put forth a rather novel argument that any private right of pros-

---

1. New York permits licensed professionals to incorporate if they are the sole organizers, owners and operators of the corporation. *See* Business Corporation Law ("BCL") §§ 1503(a),(b), 1508. To incorporate, the licensed individual(s) must obtain a "certificate … issued by the Department of Education certifying that each of the proposed shareholders, directors and officers is authorized by law to practice a profession which the corporation is being organized to practice." *Id.* at § 1503(b). Once the corporation is formed, shareholders may not transfer their voting power to any person who is not a licensed professional in the field. *See* BCL § 1507. New York law prohibits non-physicians from sharing ownership in medical service corporations. BCL §§ 1507, 1508, and Education Law § 6507(4)(c).

ecution inferred from the decision in *Mallela*, was statutorily eliminated by the subsequent passage of New York State Insurance Law § 5109 and that Plaintiff therefore lacks standing to pursue its claims. (Def. Mem. of Law at 18). The Court agrees with defendants that a common law private right of action under the No–Fault Laws was first recognized in *Mallela*. There, the Court of Appeals noted that no cause of action for fraud or unjust enrichment would lie for payments made to fraudulently incorporated providers before 11 N.Y.C.R.R. § 65–3.16(a)(12) went into effect. *Id.* at 322, 794 N.Y.S.2d 700, 827 N.E.2d 758. By disallowing such claims by insurers for payments made before April 4, 2002, the effective date of the regulation, the *Mallela* Court recognized that the law as it existed prior to that date did not recognize claims to recoup payments from entities because they were fraudulently incorporated. *Id.* ("Because we rest our holding on the Superintendent's amended regulation declaring fraudulently licensed corporations ineligible for reimbursement, no cause of action for fraud or unjust enrichment would lie for any payments made by the carriers before that regulation's effective date of April 4, 2002."). Thus, it seems clear that *Mallela* was the first case to recognize an insurer's right to sue fraudulently incorporated medical practices for fraud and unjust enrichment.

However, it is not quite as certain that Insurance Law § 5109 was subsequently enacted to stifle this newly created right. As stated in the bill jacket, the purpose or general idea of the § 5109 was to "require[ ] the Superintendent of Insurance to establish a procedure for decertifying health care providers who engage in de-

ceptive billing or fraudulent practices and making them ineligible to submit bills or claims for payment under the no-fault auto insurance program." Memorandum in Support of Legislation, *reprinted in Bill Jacket*, ch. 423 L.2005 New York Legislative Service Inc. The purported justification for such an amendment was that "[p]roviders who work with 'medical mills' rarely have their licenses revoked, leaving no effective way to prevent them from continuing to submit fraudulent or excessive bills." *Id.* In essence, this regulation appears to provide a streamlined process for the decertification of health care providers who commit No–Fault insurance fraud so that such providers will not be able to continue to submit fraudulent claims. There is nothing in either the statutory language or the legislative history, outside of the proximity of its passage to the decision in *Mallela*, that would lead one to believe the two are related.

"It has long been recognized that 'the *no-fault law* is in derogation of the common law and it is a firmly established principle of law that statutes in derogation of the common law are to be strictly construed and the common law is never abrogated by implication. In short, the common law must be held to be no further abrogated than the clear import of the language used in the statute absolutely requires.' " *Gersten v. American Transit Ins. Co.*, 161 Misc.2d 57, 613 N.Y.S.2d 555 (N.Y.Sup.1994) (*citing Scarpelli v. Marshall*, 92 Misc.2d 244, 247, 399 N.Y.S.2d 1001 (Sup.Ct. Nassau Cnty. 1977); McKinney's Cons Laws of NY, Book 1, Statutes § 301). Without a clear indication in the statutory text or legislative history of § 5109 of an intent to abrogate the common law, the common law must stand as it was.[2]

---

**2.** An issue the Legislature should address given this era of incessant fraud, waste, and abuse.

Furthermore, since the passage of § 5109 in 2005 there have been a number of affirmative lawsuits for fraud brought by private insurance companies that have not been dismissed for lack of standing. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Grafman,* 655 F.Supp.2d 212 (E.D.N.Y. 2009) (denying defendant's motion to dismiss where plaintiff adequately pled that defendant unfairly benefitted from fraudulent misrepresentations about meeting the licensing requirements of the No–Fault Laws); *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.,* 589 F.Supp.2d 221 (E.D.N.Y.2008) (allowing suit to go forward, discussing only whether the 30 day rule would foreclose affirmative lawsuits for fraud); *One Beacon Ins. Group, LLC v. Midland Medical Care, P.C.,* 54 A.D.3d 738, 863 N.Y.S.2d 728 (2d Dep't 2008) (allowing suit for declaratory judgment and unjust enrichment to go forward); *State Farm Mutual Auto. Ins. Co. v. Grafman,* 04–CV–2609 (NG), 2007 U.S. Dist. LEXIS 96751, at *39–40 (E.D.N.Y. May 22, 2007) ("it does not follow that the courts would [. . .] preclude an insurer who has timely paid a claim from subsequently asserting an affirmative claim of fraud"); *St. Paul Travelers Ins. Co. v. Nandi,* 06–CV–24107 (JPD), 15 Misc.3d 1145(A), 2007 WL 1662050, at *7 (N.Y.Sup. May 25, 2007) (noting that "prior to *Mallela* no private right of action existed which permitted an insurer to seek enforcement of the governing statutory provisions and regulations or to recover damages based upon the breach of the same" but recognizing the right now exists); *State Farm Mut. Auto. Ins. Co. v. Kalika,* 04–CV–4631 (CBA), 2006 WL 6176152, at *5, 2006 U.S. Dist. LEXIS 97454, at *15 (E.D.N.Y. Mar. 16, 2006) (Report & Recommendation of Magistrate Judge Pollack adopted by Judge Amon on March 31, 2006) ("The policy of ensuring prompt payment or denial of claims in exchange for a reduction in the number of litigation claims filed is not served by allowing fraudulent schemes to be perpetrated without recourse to the insurer seeking reimbursement for claims wrongly paid as a result of fraud and deceit"). Neither the defendants nor the courts in any of these cases suggested that § 5109 somehow limited a plaintiff's right to pursue claims for fraud and unjust enrichment under the No–Fault Laws. Defendants have not provided, and this Court has been unable to find, any case to support its theory.

Defendant's use of *Rocanova v. Equitable Life Assur. Soc. of U.S.,* 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940 (N.Y. 1994) is disingenuous at best. Instead of holding that "New York courts do not construe a private right of action under the Insurance law, in the absence of express language authorizing such enforcement," as defendants represent (Def. Mem. of Law at 20), the Court of Appeals merely found that § 2601 of the Insurance Law did not create an independent basis for a private right of action. *Id.* at 614–15, 612 N.Y.S.2d 339, 634 N.E.2d 940. Aside from limiting its holding to § 2601, the Court of Appeals also acknowledged that any common-law right to sue an insurer for punitive damages was not preempted by the enactment of section 2601. *Id.* at 615, 612 N.Y.S.2d 339, 634 N.E.2d 940. The Court will not allow itself to be misled by defendants' paltry subterfuge.

While the Court agrees with defendants that, like the Workman's Compensation scheme,[3] only the Superintendent of Insurance is authorized to *decertify* a profes-

---

**3.** Under New York State Workers' Compensation Law § 13–d, only the Chair of the Worker's Compensation Board may removed a provider from the list of those eligible to receive worker's compensation benefits.

sional medical corporation, decertification is not at issue here. Defendants appear to have pulled their argument out of thin air and then resorted to fourberie to piece together unrelated case law that purports to support their position, but provides them no real support at all. § 5109 creates a mechanism to decertify fraudulently incorporated practices, relieving insurance companies of the obligation to pay their claims; however, it does not provide a way for insurance companies to recoup funds that have already been paid out as a result of such fraud. Adopting the position defendants advocate would not only fly in the face of established law, it would allow fraudulently incorporated medical practices to continue to be unjustly enriched by their actions. This the Court will not condone.

That Plaintiff seeks a declaratory judgment, in addition to damages, does not change the analysis. New York courts have maintained that insurers have the right to seek a judgment that a medical provider is ineligible to receive No–Fault benefits, even after the passing of § 5109. *See Dynamic Medical Imaging, P.C., as Assignee of Staffa Pasqualino v. State Farm Mut. Auto. Ins. Co.*, 29 Misc.3d 278, 905 N.Y.S.2d 880, 886 (N.Y.Dist.Ct. Nassau Cnty. 2010) ("an insurer can commence a declaratory judgment action seeking a judgment declaring the provider ineligible to receive no-fault payments"); *see also, Autoone Ins. Co. v. Manhattan Heights Medical, P.C.*, 24 Misc.3d 1228(A), 899 N.Y.S.2d 57 (Table), 2009 WL 2357003, at *6 (N.Y.Sup. July 31, 2009) (denying motion to dismiss an action for a declaratory judgment that an insurer was not required to pay the no-fault claims of fraudulently incorporated providers); *One Beacon Insurance Group, LLC v. Halima*, 29 Misc.3d 1211(A), Slip Copy, 2008 WL 8117068, at *6 (Table) (N.Y.Sup. July 15, 2008) (denying a motion to dismiss an action for declaratory judgment arising from the fraudulent incorporation of the defendant medical professional corporations); *St. Paul Travelers Ins. Co. v. Nandi*, 15 Misc.3d 1145(A), 841 N.Y.S.2d 823 (Table), 2007 WL 1662050 (N.Y.Sup. May 25, 2007) (same).

■ To state a claim for a declaratory judgment, a plaintiff must allege that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir.1996). Here, Plaintiff has sufficiently alleged that there is a substantial controversy concerning whether Plaintiff is required to make payments to Metropolitan.

■ Plaintiff also sufficiently alleges a claim of unjust enrichment. Unjust enrichment is an equitable principle, an obligation which the law creates, in the absence of any agreement, when and because acts of the parties or others have placed in the possession of one person money ... under such circumstances that in equity and good conscience he ought not to retain it. *Mfrs. Hanover Trust Co. v. Chem. Bank*, 160 A.D.2d 113, 117, 559 N.Y.S.2d 704 (1st Dept.1990). To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir.2000) (internal quotations omitted). The benefit to the defendant is not limited to monies, and can be either direct or indirect. *See MDO Dev. Corp. v. Kelly*, 726 F.Supp. 79, 85 (S.D.N.Y.1989); *Blue Cross of Cent. N.Y. v. Wheeler*, 93 A.D.2d 995, 996, 461 N.Y.S.2d 624 (4th Dept.1983). Defendants

contend that Plaintiff has failed to state a claim for unjust enrichment because it has not alleged that the medical services that were the subject of the challenged claims were medically unnecessary or not rendered. (Def. Mem. of Law at 25). Defendants continue to misconstrue the issue.

As described above, defendants ignore that, under *Mallela* and New York law, Plaintiff is not required to pay monies to an improperly licensed professional corporation. By continuing to hold Metropolitan out as something Plaintiff argues its not (a company run by licensed medical professionals), defendants seem to believe they can continue mulcting insurance companies for their No–Fault funds without recourse. In reality, if Plaintiffs allegations are true, it is entitled to recoup any payments made. This unjust enrichment cause of action is thus adequately pled.

In light of the above discussion, defendants' motion to dismiss Plaintiff's claims for common law fraud, unjust enrichment, and a declaratory judgment against Metropolitan is DENIED.

### III. The Court Credits New York State Insurance Department's Position on the Eligibility of Independent Contractors to Receive No–Fault Benefits

■ It is well-settled that an administrative agency's construction and interpretation of its own regulations is entitled to the greatest weight. *Matter of Herzog v. Joy,* 74 A.D.2d 372, 375, 428 N.Y.S.2d 1 (1st Dept.1980), *aff'd* 53 N.Y.2d 821, 439 N.Y.S.2d 922, 422 N.E.2d 582 (1981); *Tommy and Tina, Inc. v. Department of Consumer Affairs of the City of New York,* 95 A.D.2d 724, 464 N.Y.S.2d 132 (1983), *aff'd* 62 N.Y.2d 671, 476 N.Y.S.2d 290, 464 N.E.2d 988 (1984). If an administrative agency's interpretation of one of its own regulations is neither

irrational or unreasonable or counter to the clear wording of a statutory provision, it should be upheld. *John Paterno, Inc. By and Through Paterno v. Curiale,* 88 N.Y.2d 328, 333, 645 N.Y.S.2d 424, 668 N.E.2d 395 (1996); *Matter of New York Pub. Interest Research Group v. New York State Dept. of Ins.,* 66 N.Y.2d 444, 448, 497 N.Y.S.2d 645, 488 N.E.2d 466 (1985); *see also, Matter of Medical Malpractice Ins. Assn. v. Superintendent of Ins.,* 72 N.Y.2d 753, 761–762, 537 N.Y.S.2d 1, 533 N.E.2d 1030 (1988).

■ 11 N.Y.C.R.R § 65–3.11(a) was promulgated by the Department of Insurance, the administrative agency empowered to implement and interpret the No–Fault Laws. *See Ostrer v. Schenck,* 41 N.Y.2d 782, 396 N.Y.S.2d 335, 364 N.E.2d 1107 (1977); *Medical Society of State v. Serio,* 100 N.Y.2d 854, 863, 768 N.Y.S.2d 423, 800 N.E.2d 728 (2003); *Breen v. Cunard Lines Steamship Company, Ltd.,* 33 N.Y.2d 508, 511, 355 N.Y.S.2d 333, 311 N.E.2d 478 (1974). In the Court's view, its interpretation of 11 N.Y.C.R.R. § 65–3.11(a) is neither irrational nor unreasonable and doesn't conflict with any statutory provision. Defendants' suggestion that opinion letters issued by administrative agencies carry little weight is without merit. *See, e.g., New York State Ass'n of Life Underwriters Inc. v. New York State Banking Dept.,* 190 A.D.2d 338, 342–343, 598 N.Y.S.2d 824 (3rd Dep't 1993), *aff'd* 83 N.Y.2d 353, 610 N.Y.S.2d 470, 632 N.E.2d 876 (1994) (holding that deference had to be given to an opinion letter issued by the New York State Banking Department which interpreted Banking Law § 96 unless the interpretation was irrational or unreasonable).

### IV. Defendant's Statute of Limitations Argument is Premature

■ As Plaintiff and defendants correctly note, the statute of limitations for

a fraud or unjust enrichment claim is six (6) years in New York. N.Y. C.P.L.R. § 213(8) (Consol.2004) (effective Aug. 17, 2004). A cause of action based upon such claims must be brought within six years of the commission of the fraud, or two years from the date the fraud could have been discovered, whichever is later. *Id.* Thus, "[t]he first step in the statute of limitations analysis is to determine when the [plaintiffs] sustained the alleged injury for which they seek redress." *In re Merrill Lynch Ltd. Partnerships Litigation,* 154 F.3d 56, 59 (2d Cir.1998). Here, although the complaint alleges that defendants' scheme to defraud it began in 1992, it only seeks damages for injuries after April 4, 2002.

■ Next, the Court is required to determine when Plaintiff "discovered or should have discovered th[e] injury." *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1103 (2d Cir.1988). The limitations period does not necessarily run on the date of the injury but, rather, when the plaintiff has "actual or inquiry notice of the injury." *Id.* Here, Plaintiff argues that defendants "knowingly misrepresented and concealed facts" in order to prevent discovery of the alleged fraud. (Compl. ¶ 52).

In light of Plaintiff's allegations, it is plausible that Plaintiff could not discover defendants' fraudulent acts until sometime after the actual injury occurred. *See Allstate Ins. Co. v. Ahmed Halima, M.D.,* No. 06–CV–1316, 2009 WL 750199 (E.D.N.Y. Mar. 19, 2009). Without discovery, the Court cannot make the "fact-sensitive" determination of when this fraud could reasonably have been discovered. *See State Farm Mut. Auto Ins. Co. v. Accurate Medical, P.C.,* No. 07–CV–0051, 2007 WL 2908205, at *2 (E.D.N.Y. Oct. 4, 2007) ("[D]efendants' argument that plaintiff's claims ... are barred by the statute of limitations necessarily assumes facts that are beyond the pleadings and that have yet

to be developed"). Defendants' argument that Plaintiff's fraud and unjust enrichment claims are untimely must be rejected as premature.

*CONCLUSION*

For the foregoing reasons, defendants' motion is DENIED in its entirety. The parties are directed to contact Magistrate Judge Reyes's Chambers in order to proceed expeditiously with discovery.

SO ORDERED.